IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

GARY D. CARTER                                                      PLAINTIFF

VS.                              CIVIL NO. 06-2201

MICHAEL J. ASTRUE,[1]
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION                       DEFENDANT

## MEMORANDUM OPINION

Gary Carter (hereinafter "plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits ("DIB") under Title II of the Act.

**Background:**

The application for DIB now before this court was filed on September 20, 2002, alleging an onset date of June 13, 1993, due to a remote head injury with residual headaches, a history of post-traumatic seizure disorder, hepatitis, and an affective mood disorder. (Tr. 21). An administrative hearing was held and an unfavorable decision was reached on October 2, 2003. (Tr. 476-483). At the plaintiff's request, the Appeals Council granted review and remanded the case back to the Administrative Law Judge ("ALJ"). (Tr. 495-498). A second administrative hearing was held on October 4, 2005. (Tr. 938-973). Plaintiff was present and represented by counsel. (Tr. 310-327).

At the time of the second administrative hearing, plaintiff was forty-one years old and possessed a high school education with vocational training as an auto mechanic. (Tr. 25, 980).

---

[1] Michael J. Astrue became the Social Security Commissioner on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

Records indicate that he has past relevant work experience ("PRW") as a mechanic, a mechanic's helper, and as a small arms repairer. (Tr. 25).

On October 11, 2005, the ALJ issued a written opinion concluding that plaintiff was insured for benefits through December 31, 1998. (Tr. 21). He also determined that plaintiff's residual headaches, history of post-traumatic seizure disorder, and affective mood disorder constituted severe impairments, but did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 21). After discrediting plaintiff's subjective allegations, the ALJ concluded that he maintained the residual functional capacity ( "RFC") to perform light work, limited by his ability to occasionally climb stairs and balance and never work at heights or around moving machinery. (Tr. 23). With the assistance of a vocational expert, the ALJ found that plaintiff could not return to his PRW, but could still perform work as a housekeeper. (Tr. 26).

On November 14, 2006, the Appeals Council declined to review this decision. (Tr. 6-9). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs and the case is now ready for decision. (Doc. # 9, 10).

**Applicable Law:**

The issue before this court is whether the Commissioner's decision is supported by substantial record evidence. "We will affirm the ALJ's findings if supported by substantial evidence on the record as a whole." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Id*. *See also Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000). "However, our review 'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that

decision.' Nevertheless, as long as there is substantial evidence in the record to support the Commissioner's decision, we will not reverse it simply because substantial evidence exists in the record that would have supported a different outcome, *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir.1995), or 'because we would have decided the case differently.'" *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001)(citations omitted).

A five-part analysis is utilized in social security disability cases. *See e.g., Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). Applying this analysis, the ALJ must determine, sequentially, the following: 1) whether the claimant is employed; 2) whether the claimant has a severe impairment; 3) whether the impairment meets a listed impairment; 4) whether the impairment prevents the claimant from doing past work; and 5) whether the impairment prevents the claimant from doing any other work. *Id*.; *see also* 20 C.F.R. § 404.1520.

If the claimant fails at any step, the ALJ need not continue. "The claimant carries the burden of establishing that [he] is unable to perform [his] past relevant work, i.e., through step four, at which time the burden shifts to the Commissioner to establish that [he] maintains the residual functional capacity to perform a significant number of jobs within the national economy." *Banks v. Massanari*, 258 F.3d 820, 824 (8th Cir. 2001)(citing *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)).

## Discussion:

Of particular concern to the undersigned is the ALJ's reliance on the assessment of Dr. Michael Karathanos, a non-examining consultant. (Tr. 23). "'As a general matter, the report of a consulting physician who examined a claimant once does not constitute 'substantial evidence' upon the record as a whole, especially when contradicted by the evaluation of the claimant's treating physician." *Id.* (internal quotations and citations omitted). In the present case, we note that Dr. Karathanos completed

3

his RFC assessment on May 10, 2005. (Tr. 897-904). While we are cognizant of the fact that plaintiff's date last insured was December 31, 1998, we note that the ALJ relied on Dr. Karathanos' opinion, dated 6 years after plaintiff's date last insured had expired, to determined plaintiff's RFC. At that time (2005), Dr. Karathanos indicated that plaintiff's liver damage, "presumably from Tegretol," was not severe and did not interfere with his activities of daily life. (Tr. 897-904). However, we note that, in October 2004, plaintiff had been evaluated for the possibility of a liver transplant due to end stage liver disease. (Tr. 538). Further, on October 14, 2004, plaintiff was placed on the liver transplant list. (Tr. 595). As this evidence clearly indicates that plaintiff's liver condition was severe at that time, we find Dr. Karathanos' opinion to be in direct conflict with the evidence of record. Accordingly, remand is necessary to allow the ALJ to reevaluate plaintiff's RFC.

We also note that, in spite of the evidence of plaintiff's severe impairments, the ALJ failed to request an RFC from any of his treating physicians. The pertinent medical records reveal the following. The medical reports of record reveal that plaintiff had been diagnosed with seizure disorder, organic brain syndrome, cluster headaches, and hepatitis. In February 1993, plaintiff reported persistent headaches occurring two to three times daily that focused on the left side of his head. (Tr. 384). He was prescribed Tegretol, Hydroxyzine, and Nifidipine. His treating doctor, Dr. Hudson, noted that plaintiff would be unable to work until his headaches resolved, although he could participate in normal activities on an as able basis in between headaches. (Tr. 384).

In December 1994, Dr. Hudson noted that plaintiff had a history of abnormal liver function tests. (Tr. 361). By April 1995, plaintiff was also experiencing chronic fatigue, episodic confusion, poor memory, and moodiness, in addition to the chronic headaches. Mild depression and fatigue were apparent to his psychiatrist, Dr. Carol Phillips, and his liver function test results continued to be

4

abnormal.  Dr. Phillips felt that plaintiff's liver problems were due to the use of Tegretol to treat his seizure disorder.  Therefore, she admitted him to the hospital for evaluation and a medication change.  (Tr. 355-356).

Plaintiff was hospitalized at the Veteran's Administration ("VA") hospital from June 4, 1995, through June 9, 1995.  (Tr. 201-244).  Dr. Phillips changed his medication from Tegretol to Valproic acid, after which plaintiff reported some improvement in mood.  (Tr. 201-202).  However, in spite of the medication change, plaintiff's liver function test results continued to worsen.  (Tr. 353).

In August 1995, plaintiff continued to report chronic problems with low energy.  (Tr. 350).  Dr. Philips noted that his hepatitis was also worsening.  (Tr. 350).  After repeat complaint of fatigue in September  1995, plaintiff was switched to Norvasc.  (Tr. 349).  However, his chronic fatigue continued into December 1995, when he again complained of problems with exhaustion, weakness, fatigue, poor memory, no motivation, and extreme drowsiness.  (Tr. 347-348, 368).  Plaintiff's  liver function levels also continued to decline.   (Tr. 369).

By March 7, 1996, plaintiff had again begun to experience an increase in the number of headaches he was experiencing and began reporting some depression.  (Tr. 344, 345).  Phillips advised him to continue the Valporic Acid and increased his Nortriptyline dosage.  (Tr. 344).

In July 1996, Dr. Hudson treated plaintiff for tenderness in his right cervical lymph node and a knot on the side of his right foot.  (Tr. 343).  By December 1996, he was experiencing pain and swelling in the right upper chest that was exacerbated by deep breathing.  (Tr. 337).  Dr. Hudson prescribed Dexamethasone.  (Tr. 337).

In May 1997, laboratory tests revealed good levels of Nortriptyline and Valproic Acid in plaintiff's system. (Tr. 405). Therefore, Dr. Phillips advised plaintiff that he could increase his Nortriptyline dosage, if he became more depressed. (Tr. 334).

In January 1998, plaintiff reported continued memory problems. (Tr. 310). A physical examination also revealed tenderness in the right occipital area. (Tr. 310). X-rays conducted in March 1998 revealed widening of the AC joint with possible resection of the tip of the right clavicle. (Tr. 308). Dr. Phillips prescribed Doxycycline and Entex and assessed plaintiff with a GAF of 50. (Tr. 307).

In July 1998, plaintiff told Dr. Hudson that he was not doing well from a mental standpoint, due to recent stresses. (Tr. 304). He had an enlarged 2nd costo-sternal joint and a tender AC joint in the right shoulder. Dr. Hudson diagnosed him with an unstable AC joint in the right shoulder and costo-sternal chondritis, for which he prescribed Toradol and another medication. (Tr. 304).

Plaintiff reported continued right shoulder pain in September 1998. (Tr. 302). The right shoulder was notably larger than the left with a more prominent AC joint. An examination revealed a full range of motion and no tenderness to palpation. The impression was old AC joint separation. (Tr. 302). However, in November 1998, plaintiff was continuing to experience discomfort in his right shoulder. (Tr. 293). On examination, there was focal grinding with a full range of motion. The costal-chrondral junction was tender on the right at the sternum. The diagnosis was right AC separation and costo-chondritis at the 2nd through 4th ribs on the right side. (Tr. 293).

Accordingly, we believe remand is necessary to allow the ALJ to obtain RFC assessments from plaintiff's treating physicians, indicating plaintiff's level of functioning on or before his date last insured. Therefore, on remand, the ALJ is directed to address interrogatories to the physicians who

6

have evaluated and/or treated plaintiff, asking the physicians to review plaintiff's medical records; to complete mental and physical RFC assessments regarding plaintiff's capabilities during the time period in question; and, to give the objective basis for their opinions, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

The ALJ was also required to properly address the finding by the VA that plaintiff was 100% disabled. *See Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir. 1998). Although the ALJ did mention the VA's disability ratings, he improperly dismissed them, stating that they were based on plaintiff's own subjective complaints. We do not, however, find substantial evidence to support this finding.

On February 9, 1993, the Veteran's Administration ("VA") rated plaintiff's impairments as follows: 10% disability due to traumatic brain disease, 10% due to loss of part of the skull, and 10% due to seizure disorder. (Tr. 386). In 1995, the VA increased plaintiff's disability rating to 50% due to post-traumatic brain disease. (Tr. 22-24). Then, in 1996, plaintiff was given a 100% disability rating. (Tr. 22-24, 460). As the medical evidence clearly reveals that plaintiff was suffering from hepatitis, cluster headaches, and organic brain disorder, we believe that the ALJ improperly dismissed the VA's disability ratings. While we realize that the VA ratings are not controlling, they should be considered in conjunction with the medical evidence of record. Therefore, on remand, the ALJ is directed to develop the record further with regard to plaintiff's VA disability ratings.

**Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and, therefore, the denial of benefits to the plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**DATED** this the 7th day of November 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

8